J-S69015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: T.R.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: I.T., NATURAL FATHER | No. 947 WDA 2017 |

Appeal from the Order May 31, 2017
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000189-2016

BEFORE:  BOWES, RANSOM, JJ. and STEVENS P.J.E.*

MEMORANDUM BY BOWES, J.:                      **FILED JANUARY 05, 2018**

I.T. ("Father") appeals the orphans' court order terminating his parental rights to his daughter, T.R.C.[1]  We affirm.

T.R.C. was born on October 21, 2014, while K.D.V. ("Mother") was married to K.T.M.  No father is identified on the birth certificate, and K.T.M. denied paternity.  Allegheny County Office of Children, Youth and Families ("CYF") became aware of the family five months later, when Mother, who has an extensive criminal record, was involved in a series of incidents in downtown Pittsburgh.  Specifically, on March 15, 2015, T.R.C. fell out of her baby carriage and became lodged in a revolving door.  Mother was

---

[1]  The child's mother, K.D.V., died on May 1, 2017, two days prior to the evidentiary hearing.

---

*  Former Justice specially assigned to the Superior Court.

intoxicated, and after T.R.C. was extricated from the door, Mother returned the infant to the stroller without securing her. Shortly thereafter, T.R.C. was thrown from the stroller a second time while Mother was crossing a busy street.[2] T.R.C. sustained a bruise on the left side of her face and abrasions on her forehead, and she was admitted to Children's Hospital of Pittsburgh for observation. CYF obtained emergency custody the following day, and placed T.R.C. in foster care upon her discharge from the hospital. She has remained in the agency's custody since that date. CYF initially placed T.R.C in kinship care with her maternal grandmother, but during August 2016, she was transferred to her current pre-adoptive foster home.

The juvenile court adjudicated T.R.C. dependent on April 17, 2015. Approximately two days earlier, the agency discovered that Father, who has been incarcerated since August 2014 and ineligible for parole until 2024, claimed to have previously executed an acknowledgment of paternity and mailed it to the location on the self-addressed envelope enclosed in a package he received while in jail. However, since CYF had no record of the document, it requested that Father submit to genetic testing to confirm

---

[2] As a result of this episode, Mother was charged with aggravated assault, endangering the welfare of children, simple assault, neglect of a care-dependent person, recklessly endangering another person, disorderly conduct, and public drunkenness.

paternity. Father routinely rejected their entreaties,[3] and to add to the confusion, while Father's paternity was subsequently confirmed for the purposes of his child-support obligations, the juvenile court vacated the domestic-relations order because Mother's husband had not yet been genetically excluded from being a potential father. The upshot of the uncertainty surrounding T.R.C.'s paternity was that CYF effectively disqualified Father from participating in the dependency proceedings. During April 2017, Father executed and filed the required acknowledgment of paternity. *Id*. at 7.

Meanwhile, on October 27, 2016, CYF filed a petition to terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a) (1), (2), (5), and (8), and § 2511(b). CYF provided Father notice of the involuntary termination proceedings and the orphans' court appointed counsel for

_____

[3] CYF advised Father that it was required to confirm paternity before it could forward him information about the dependency proceedings, permit him to exchange photographs, or schedule visitations between T.R.C. and him or the paternal grandmother. N.T., 5/3/17, at 24. It sent representatives to the jail in order to perform genetic testing, but Father refused to participate. *Id*. at 80. Father purported to rebuff genetic testing for "religious reasons" but he was not able to articulate the precise bases of his objections. *Id*. at 83. During the hearing on the petition to terminate his parental rights, he proffered the vague explanation, "it's prohibited, like, for a person that's Muslim to, in so many words, go against the decree of what God gave you." *Id*. Despite the orphans' court's prodding inquiry, Father was unable to explain how his ambiguous statement applied in this scenario. *Id*. at 84.

Father.[4]  During the ensuing hearing, CYF presented the testimony of the current and former case workers assigned to the family.  As it relates to Father's instant complaint, both case workers testified about their interactions with Father during the dependency proceedings and his persistent refusal to acquiesce to genetic testing.  The parties stipulated to the admission of two psychological reports prepared by the court-appointed psychologist, Neil D. Rosenblum, Ph.D., who opined, "it is my clinical opinion that . . . adoption is not only consistent with T.R.C.'s needs and welfare, but in my clinical opinion vital to her continued developmental growth and the only way to ensure sustained emotional security for T.R.C." **See** CYF Exhibit 2b, Psychological Report, 8/23/16, at 3.

---

[4] The guardian *ad litem*, Cynthia Moore, Esquire, represented T.R.C. during the contested termination proceedings.  While Father does not challenge Attorney Moore's role in the termination proceedings, we are cognizant of our Supreme Court's recent decision in **In Re Adoption of L.B.M.**, 161 A.3d 172 (Pa. 2017), wherein the majority of the justices held that 23 Pa.C.S. § 2313(a) required that counsel be appointed to represent the legal interests of any child involved in a contested involuntary termination proceeding.  The High Court recognized, however, that Part II–B of the opinion was not precedential and did not overrule our holding in **In re K.M.**, 53 A.3d 781 (Pa.Super. 2012).  That decision held that a guardian *ad litem* who is an attorney may act as counsel so long as the dual roles do not create a conflict between the child's best interest, as determined by the trial court, and the child's legal interest, which the High Court defined as synonymous with his or her preferred outcome.

Instantly, Attorney Moore supported the termination of Father's parental rights as serving T.R.C.'s best interests.  Our review of the record does not reveal any conflict between this position and the legal interests of the non-verbal two-and-one-half-year-old.

Father testified on his own behalf and presented the testimony of his mother, L.P. ("Paternal Grandmother"). He maintained that he contacted CYF at the outset of the dependency proceedings but the agency failed to exercise reasonable efforts to assist him in reunifying with his daughter. Stated plainly, Father asserts that he should not be penalized for the CYF's inaction.

After considering the evidence, the orphans' court entered the above-referenced order terminating Father's parental rights pursuant to § 2511(a)(2) and (8). The orphans' court chastised CYF for what it characterized as the agency's inexcusable treatment of Father during the dependency proceedings. It determined that, by denying Father services and barring his participation in the juvenile court proceedings, CYF undercut its claim for the involuntary termination of parental rights under § 2511(a)(1) and (a)(5). Tellingly, both of those provisions implicate the agency's services, whether directly or indirectly. Thus, as the orphans' court accurately highlighted, CYF's petition failed as to those sections.

However, the orphans' court noted that CYF's conduct was irrelevant under at least one of the grounds for termination the agency asserted under § 2511. The court reasoned that, while CYF should have permitted Father limited access to the dependency proceedings so that he could request the juvenile court to accept his purported acknowledgement of paternity, Father's extensive record of incarceration and the fact that he will not be

eligible for release for at least seven more years, constitute a repeated parental incapacity that cannot be remedied as outlined in § 2511(a)(2). Thus, notwithstanding the fact that CYF neglected to provide Father any reunification services during the dependency proceedings, the orphans' court concluded that the agency established valid grounds to terminate Father's parental rights under the Adoption Act.

This timely appeal followed. Father complied with Pa.R.A.P. 1925 (a)(2)(i) by filing a concise statement of errors complained of on appeal wherein he asserted a single issue, which he reiterates on appeal as follows: "Whether the trial court erred in determining that CYF has established grounds to terminate [F]ather's parental rights pursuant to 23 Pa.C.S. [§] (a)(2) and (8)." Appellant's brief at 4.

The crux of Father's contention is that, by neglecting to invite him to participate in the juvenile court proceedings, CYF tainted the termination proceedings before the orphans' court. Father reasons that the orphans' court's acknowledgment of CYF's inaction was inadequate to dissuade the agency from erecting similar obstacles in the future that will impede the participation of similarly situated parents. He opines, "If we have recognized that parents' rights are fundamental, as we have, we must also recognize that these rights must be diligently and scrupulously safeguarded." Father's brief at 12. No relief is due.

The pertinent scope and standard of review of an order terminating parental rights is as follows:

> Appellate courts are required to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M*, 71 A.3d 251, 267 (Pa. 2013) (cleaned up). It is equally well-established that, "in termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re S.H.*, 879 A.2d 802, 806 (Pa.Super. 2005).

As noted, *supra*, the grounds for termination of a parent's parental rights are governed by 23 Pa.C.S. § 2511 (a) and (b), which provides in pertinent part as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>    . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence

- 7 -

necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

We need only agree with the orphans' court's decision as to one subsection of 23 Pa.C.S. § 2511(a) and subsection (b) in order to affirm the termination of parental rights.[5] *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super.

_____

[5] As Father does not challenge the orphans' court's needs-and-welfare analysis pursuant to § 2511(b), we do not address it. *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 n.3 (Pa.Super. 2017) (explaining that this Court need not review orphans' court's § 2511(b) analysis *sua sponte*).

- 8 -

2004) (*en banc*). Instantly, the record supports terminating Father's parental rights under § 2511(a)(2).[6]

To terminate parental rights pursuant to § 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003). Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 340 (Pa.Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id*.

As it relates to Father's chronic incarceration throughout his daughter's life, in *In re Adoption of S.P.,* 47 A.3d 817 (Pa. 2012), our Supreme Court clarified the case law addressing the effects of incarceration upon a parent's

---

[6] Although the orphans' court also determined that CYF's inaction did not preclude it from finding that the agency established the statutory grounds outlined in § 2511(a)(8), we need not address the propriety of that conclusion in light of our reliance on § 2511 (a)(2).

ability to provide essential care and control pursuant to § 2511(a)(2). After providing a scholarly review of the relevant case law, the High Court reasoned,

> [W]e hold that incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*Id*. at 828. The Court expounded,

> In line with the expressed opinion of a majority of justices in [*In re R.I.S.*, 36 A.3d 567 (Pa. 2011)]*,* our prior holdings regarding incapacity, and numerous Superior Court decisions, we now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2).

*Id*. at 830. Hence, it is now beyond cavil that a parent's incarceration is relevant to the section (a)(2) analysis and, depending on the circumstances of the case, it may be dispositive of a parent's ability to provide the "essential parental care, control or subsistence" that the section contemplates. *See* 23 Pa.C.S. § 2511(a)(2). This case presents one such scenario.

Father was incarcerated during June 2014, he will not serve his minimum sentence until 2024., and his actual release could be delayed until 2034, his maximum sentence.[7] It is clear from the testimony during the evidentiary hearing that Father's incarceration is tantamount to a continued incapacity that precludes him from providing T.R.C. the essential parental care, control and subsistence that she requires. Moreover, the incapacity will continue for at least ten years and could extend until she is a twenty-year-old woman. Thus, the record sustains the orphans' court's finding that Father's prolonged imprisonment is the determinative factor under § 2511(a)(2). Plainly, Father's continued incapacity due to incarceration has caused T.R.C. to be without essential parental care, control or subsistence and regardless of any services CYF failed to provide, he cannot remedy the causes of the incapacity any sooner than 2024.

Next, we address Father's primary complaint that the agency failed to exercise reasonable efforts to promote his reunification with T.R.C. due to his prolonged incarceration. Our High Court addressed this precise issue in *In re D.C.D.*, 105 A.2d 662 (Pa. 2014), and held that it was improper to deny a petition for the termination of parental rights solely due to an agency's failure to provide a parent reasonable efforts toward reunification.

_____

[7] At criminal action number CP-02-CR-0011051-2014, Father was sentenced to a term of ten to twenty years imprisonment for criminal conspiracy to commit robbery with serious bodily injury.

*Id*.  Specifically, the Court ruled, "No Pennsylvania or federal provision requires delaying permanency for a child due to failure of an agency to provide reasonable services, when a court has otherwise held that grounds for termination is in the best interests of the child by clear and convincing evidence." *Id*. at 666.  It reasoned that such sanction was contrary to the child's best interest.

The salient facts of *In re D.C.D.* are as follows.  The agency sought to terminate the parental rights of an incarcerated father who was not identified as a birth parent when his daughter was born during 2011.  The father was serving an aggregate term of 7 ¾ to sixteen years imprisonment, and he was not eligible for parole until 2018.  During the ensuing dependency proceedings, the agency provided the father few services and offered only one video visitation and one in-person visitation.  Recognizing that the father's parenting incapacity would continue at least until his daughter would be seven years old and could persist until his maximum release date, the trial court granted the agency's petition for involuntary termination of parental rights pursuant to § 2511(a)(2).  The father appealed and we reversed, finding that the trial court erred in terminating the father's parental rights when the agency failed to provide him with reasonable efforts to promote reunification.  Our Supreme Court granted review, reversed our decision, and reinstated the trial court's order terminating the father's parental rights.

In reversing our decision, the Supreme Court concluded that the agency's "reasonable efforts" were not elements of the statutory grounds to terminate parental right pursuant to § 2511(a)(2). The High Court reasoned,

> [A] child welfare agency cannot refuse reasonable efforts to an incarcerated parent and then point to the resulting erosion in the parental bond created by the agency as justification for termination of parental rights. The fact that such a scenario can be articulated, however, does not transform the provision of reasonable efforts to reunite parents and children into a requirement for termination. Nothing in the law goes so far, and the Superior Court erred in so holding.
>
> Further, while we acknowledge that other states have included reasonable efforts as either an element or merely a factor in their termination provisions, the Pennsylvania legislature has not incorporated reasonable efforts into the language of 23 Pa.C.S. § 2511(a)(2), and it would be improper and, indeed, unwise for this Court to add such an element to the statute by judicial fiat. In contrast, we recognize that the legislature included consideration of the reasonable services available to the parent in regard to another ground for termination, subsection 2511(a)(5) (providing for consideration of whether "the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time").

*Id*. at 672-73. Hence, the Supreme Court concluded that this Court erred in imposing the additional element of reasonable efforts under 23 Pa.C.S. § 2511 (a)(2), and in vacating the termination of parental rights despite the trial court's finding that the father was not capable of parenting and could not remedy the incapacity.

- 13 -

For identical reasons, we reject Father's complaint herein. Although CYF failed to exercise reasonable efforts, a fact that the orphans' court highlighted in chastising the agency for its derogation, the lack of reunification services does not negate the fact that Father's prolonged incarceration will continue to prevent him from providing essential parental care of T.R.C. until 2024 at the earliest. Thus, consistent with our Supreme Court's holding in **In re D.C.D.**, *supra*, we conclude that the orphans' court did not err in terminating Father's parental rights pursuant to § 2511(a)(2) under the facts of this case.

For all of the foregoing reasons, we affirm the orphans' court's order terminating Father's parental rights to T.R.C. pursuant to 23 Pa.C.S. § 2511(a)(2) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/5/2018